**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------x
:
    LATOYA S.,                                :
:
                  Plaintiff,     :        22-CV-7045 (OTW)
:
         -against-       :        **OPINION & ORDER**
:
    COMMISSIONER OF SOCIAL SECURITY,   :
:
                Defendant.   :
:
---------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

On September 12, 2019, Plaintiff Latoya S.[1] ("Plaintiff") filed a Title II application for

a period of disability, disability insurance benefits, and a Title XVI application for

supplemental security income ("SSI"). (ECF 20 at 17). Plaintiff filed this action pursuant to

Section 205(g) of the Social Security Act ("SSA") against the acting Commissioner of the

Social Security Administration, seeking review of the Commissioner's denial of Plaintiff's

application. (ECF 1 at 1). The parties consented to magistrate judge jurisdiction. (ECF 14).

Plaintiff filed a motion to remand this case to the Social Security Administration for further

administrative proceedings (ECF 22), and Defendant moved for judgment on the pleadings.

(ECF 25). For the following reasons, Plaintiff's motion is **GRANTED** and Defendant's

motion is **DENIED**.

---

[1] Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the
recommendation of the Committee on Court Administration and Case Management of the Judicial
Conference of the United States.

## I.   BACKGROUND

### A.  Administrative Proceedings

Plaintiff filed her Title II application for a period of disability, disability insurance benefits, and a Title XVI application for SSI on September 12, 2019, alleging her disability began on October 1, 2017. (ECF 20 at 17). Her claims were initially denied on November 27, 2019, and denied again after reconsideration on October 23, 2020. *Id*. On October 6, 2021, Administrative Law Judge ("ALJ") Dennis G. Katz denied Plaintiff's claims, after holding telephonic hearings on February 25, 2021 and September 22, 2021. (ECF 23 at 7). On June 21, 2022, the Appeals Council denied Plaintiff's request for appeal. *Id*.; ECF 1 at 2. Plaintiff filed the instant complaint on August 18, 2022, pursuant to 42 U.S.C. § 405(g). *Id*.

### B.  The ALJ's Decision[2]

ALJ Katz found that Plaintiff had not engaged in substantial gainful activity since October 1, 2017, and had severe impairments including seizure disorder, sciatica, and cervical radiculopathy. (ECF 23 at 10). Katz also found the following non-severe medical impairments: childhood asthma, thyroid disorder, hypertension, gastroesophageal reflux disease, and irritable bowel syndrome. *Id*. at 10–11. He found that that these impairments did not meet or medically equal the severity of any of Listings 1.15, 1.16, or 11.02. *Id*. at 11, citing to record transcript. The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work and "some light exertion level work" with a few exertional and non-exertional limitations. *Id*. Finally, ALJ Katz found that

---

[2] The administrative record is filed at ECF 20 and subparts. Where an ECF number is cited, a page reference will be to the ECF page number.

Plaintiff's additional limitations had no effect on the occupational base of unskilled

sedentary work and denied her the benefits she sought. *Id*.

### C. Procedural History

Plaintiff commenced this action by filing a complaint on August 18, 2022. (ECF 1).

The parties consented to magistrate judge jurisdiction on March 21, 2023. (ECF 14). On

May 15, 2023, the administrative record was filed. (ECF 20). On July 17, 2023, Plaintiff filed

a motion to remand this case to the Social Security Administration for further

administrative proceedings (*see* ECF Nos. 22 and 23), and on September 14, 2023,

Defendant moved for judgment on the pleadings. (*See* ECF Nos. 25 and 26). The motion

was fully briefed on September 27, 2023. (ECF 27).

## II.   APPLICABLE LAW

### A. Standard of Review

A motion for judgment on the pleadings should be granted if the pleadings make

clear that the moving party is entitled to judgment as a matter of law. Additionally, the

Court's review of the Commissioner's decision is limited to an inquiry into whether there is

substantial evidence to support the Commissioner's findings and whether the correct legal

standards were applied. Substantial evidence is more than a mere scintilla. It only requires

the existence of "relevant evidence as a reasonable mind might accept as adequate to

support a conclusion," even if there exists contrary evidence. *Halloran v. Barnhart*, 362

F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Alston*

*v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (same). This is a "very deferential standard of

review." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012). The Court may not

determine *de novo* whether Plaintiff is disabled but must rely on the underlying record.

"When there are gaps in the administrative record or the ALJ has applied an

improper legal standard," or when the ALJ's rationale is unclear, remand "for further

development of the evidence" or for an explanation of the ALJ's reasoning is warranted.

*Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### B.  Weighing Medical Opinions

For claims such as this one, filed on or after March 17, 2017, ALJs apply the new

regulations in 20 C.F.R. §§ 404.1520c and 416.920c in lieu of applying the treating

physician rule. *See Acosta Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682 (AJN) (KHP), at

*9 (collecting cases). Under the new regulations, ALJs "will not defer or give any specific

evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §

416.920c(a). Instead, ALJs "will articulate in [their] determination or decision how

persuasive [they] find all of the medical opinions." *Id*. at § 416.920c(b). ALJs must consider

all medical opinions and determine their respective persuasiveness considering:

supportability; consistency; relationship of the medical source to the claimant;

specialization; and "other factors." *Id*. at §404.1520c(c)(1)–(5).

The supportability and consistency factors are the "most important." *Id*. at

§ 416.920c(a). Accordingly, the regulations mandate that ALJs "will explain how [they]

considered the supportability and consistency factors for a medical source's medical

opinions." *Id*. at § 416.920c(b)(2); *see also Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630

(LJL) (BCM), 2020 WL 8167136, at *22 (S.D.N.Y. Dec. 30, 2020), *report and*

*recommendation adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (remanding so that the ALJ may "reevaluate the persuasiveness assigned to the opinion evidence of record and explicitly discuss both the supportability and the consistency of the consulting examiners' opinions"); *Vellone v. Saul*, No. 20-CV-261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021) ("[I]n cases where the new regulations apply, an ALJ *must* explain his/her approach with respect to the first two factors when considering a medical opinion[.]") (emphasis in original). "Supportability" is "the objective medical evidence and supporting explanations presented by a medical source." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to how the medical source's opinions compare with "evidence from other medical sources and nonmedical sources in the claim." *Id*. at 404.1520c(c)(2). Although ALJs are only required to articulate their consideration of those two factors, ALJs must consider all five factors when determining a medical opinion's persuasiveness. *Id*. at § 416.920c(c).

### C.  **Five-Step Evaluation Process**

To be awarded disability benefits, the SSA requires that one have the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ makes this determination through a five-step evaluation process, for which the burden rests on the Plaintiff for the first four steps. Only after all four steps are satisfied does the burden then shift to the Commissioner for the final step: First, the ALJ must determine that Plaintiff is not currently engaged in substantial gainful activity.

Second, the ALJ must find that Plaintiff's impairment is so severe that it limits their ability to perform basic work activities. Third, the ALJ must evaluate whether Plaintiff's impairment falls under one of the impairment listings in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 such that they may be presumed to be disabled. Absent that, the ALJ must then determine the Plaintiff's RFC, or their ability to perform physical and mental work activities on a sustained basis. Fourth, the ALJ then evaluates if Plaintiff's RFC allows him to meet the physical and mental demands of his prior employment. If Plaintiff has satisfied all four of these steps, the burden then shifts to the Commissioner to prove that based on Plaintiff's RFC, age, education, and past work experience, that Plaintiff is capable of performing some other work that exists in the national economy.

*Id*. at § 416.920(a)(4)(i)–(v).

## III.    ANALYSIS OF THE ALJ'S DECISION

Plaintiff raises two main arguments in support of her request for reversal of the ALJ's decision: (1) the ALJ failed to consider evidence that Plaintiff's seizures were manifestations of a psychiatric disorder, which led to an incorrect or incomplete determination that Plaintiff did not meet Listing 11.02; and relatedly, (2) the ALJ failed to develop the record regarding pseudo-seizures and conversion disorder and consider whether Plaintiff's impairments met the listing for pseudo-seizures and conversion disorder. (ECF 23 at 24–29).[3]

---

[3] Point III of Plaintiff's brief is entitled, "Plaintiff is Unable to Engage in Substantial Gainful Activity." (ECF 23 at 29). This section argues largely that the ALJ erred in finding that Plaintiff's descriptions of her seizures were not corroborated by the medical evidence. *Id*. at 29–30.

A. **Seizure Disorder**

Although Plaintiff's brief is not clear, she seems to be arguing that because

Plaintiff's seizures were not clearly epilepsy, the ALJ erred in considering only Listing 11.02

(Epilepsy). (ECF 23 at 24). I agree.

The medical record shows that Plaintiff sought medical help for her seizures as

early as October 2017, when she presented to the emergency room after having a seizure

that was witnessed by her family. (ECF 20 at 25; ECF 23 at 11-12; ECF 26 at 10). She was

also pregnant. (ECF 23 at 12). Plaintiff herself testified that she had experienced seizures

since childhood, and that she was having seizures weekly in 2019, but she did not go to the

hospital each time, because she was told only to go to the hospital if the seizure lasted

longer than five minutes. *Id*. at 8, citing to record transcript. Plaintiff also testified about

past trauma, physical and sexual abuse when she was a child, and a prior suicide attempt

when she was a teen, and that she did not report all of her experiences of trauma and

abuse "because she had a pattern of not being believed by others." *Id*. at 21.

The medical records also indicated that as early as July 2020, medical providers had

noted — repeatedly — that the seizures were not consistent with epileptic seizures. Even

the ALJ notes that the EEGs from August 2020 "were suggestive of psychogenic non

epileptic seizures." (ECF 20 at 27). Indeed, the medical notes from that same August 2020

visit identify "conversion disorder" as well as epilepsy. (ECF 20-2 at 135). For this reason

alone, the case should be remanded for the ALJ to further develop the record as it was

error for the ALJ to only consider Listing 11.02 (Epilepsy) for her seizure disorder, without

considering the Listings for Mental Disorders, 12.01 *et seq.*[4]

Moreover, the ALJ misapplied Listing 11.02. While epilepsy was considered a

possible cause of Plaintiff's seizures, the medical providers noted — time and again — that

Plaintiff's seizures did not present with typical markers of epilepsy. The instructions in the

listings themselves direct a reviewer **<u>away</u>** from Listing 11.02 in cases like this one:

> H. What is epilepsy, and how do we evaluate it under 11.02?

> 1. <u>Epilepsy</u> is a pattern of recurrent and unprovoked seizures that are manifestations of abnormal electrical activity in the brain. There are various types of generalized and "focal" or partial seizures. **However, *psychogenic nonepileptic seizures and pseudoseizures* are not epileptic seizures for the purpose of 11.02. We evaluate psychogenic seizures and pseudoseizures under the mental disorders body system, 12.00.** In adults, the most common potentially disabling seizure types are generalized tonic-clonic seizures and dyscognitive seizures (formerly complex partial seizures).

Disability Evaluation Under Social Security: 11.00 Neurological – Adult, Listing 11.00.H(1) (emphases added).

Finally, it is almost laughable – except that Plaintiff's seizures are no laughing

matter – that the ALJ repeatedly suggested that Plaintiff's "mental illness" (quotation

marks in original) and suicidal "thoughts" (quotation marks in original) were raised "**for the**

**first time**" (emphasis in original) in March 2021 "with minimal medical evidence in support

thereof." (ECF 20 at 18). Similarly, the ALJ dismissed Plaintiff's reporting of the seriousness

---

[4] *See, e.g.*, Listing 12.00.B.6 (referencing "pseudoseizures" to be considered under Listing 12.07, and "Examples of disorders that we evaluate in this category [12.07] include somatic symptom disorder, illness anxiety disorder, and conversion disorder.").

of her seizures in a single line: "The foregoing claims are not corroborated by the medical

record." *Id*. at 24. The medical notes are replete with Plaintiff and her family's reporting of

what they witnessed during the seizures that Plaintiff and her family believed to be serious

enough to warrant a trip to the emergency room *after* they had occurred.[5] That this

happened multiple times also matters. The ALJ's dismissal of Plaintiff's testimony

regarding her seizure disorder, without addressing the factors enumerated in 20 C.F.R.

§§ 404.1529(c)(3)(i)-(vi), is an additional independent reason for remand. *Norman v. Astrue*,

912 F. Supp. 2d 33, 43 (S.D.N.Y. Sept. 25, 2012).

In recommending remand in a recent case where a plaintiff presented with a history

of seizures and a diagnosis of psychogenic non epileptic seizures, Judge Peebles wrote:

> The ALJ's failure to appropriately and fully consider the true nature of
> plaintiff's seizure activity also calls into question his rejection of Dr.
> Stackman's opinion. Indeed, part of the reason for rejecting that opinion
> was the fact that it was based on a diagnosis of epilepsy, and plaintiff was
> shown not to have epilepsy. However, the fact that plaintiff does not have
> epilepsy does not mean he does not have a legitimate, discernable disorder
> that causes seizure-like episodes that could result in him being off-task or
> having other limitations. Based on the ALJ's clear failure to consider
> plaintiff's PNES, the ALJ's conclusion that Dr. Stackman's opinion is not
> supported by or consistent with the evidence in this case cannot be
> accepted as being supported by substantial evidence. Whether the
> evidence does support the level of limitation opined by Dr. Stackman is not
> for this court to decide, but rather should be assessed by an ALJ in the first

---

[5] The ALJ seems to expect the impossible here: in order for a severe seizure to be "corroborated by the medical record" beyond Plaintiff's and other witnesses' recounting of the seizure would require that Plaintiff experience a severe seizure while in the hospital, while witnessed by a medical provider. *See, e.g., Gaslighting in women's health: No, it's not just in your head,* Katz institute for Women's Health, https://www.northwell.edu/katz-institute-for-womens-health/articles/gaslighting-in-womens-health (accessed Mar. 27, 2024); Long, M. Fredericksen, B, Ranji, U., Diep, K., Salganicoff, A., *Women's Experiences with Provider Communication and Interactions in Health Care Settings: Findings from the 2022 KFF Women's Health Survey,* KFF, Feb. 22, 2023, https://www.kff.org/womens-health-policy/issue-brief/womens-experiences-with-provider-communication-interactions-health-care-settings-findings-from-2022-kff-womens-health-survey/ (accessed March 27, 2024) (noting that women, and particularly women of color and lower income women experience negative interactions with health care providers, or have symptoms dismissed).

instance after appropriately considering all of the evidence before him or her in a reasoned manner.

The ALJ's conclusion that plaintiff's seizure activity was not substantiated or of no consequence simply because he did not have a specific diagnosis of epilepsy not only is a gross misunderstanding of the medical issues in this case, but is also contradicted by the objective medical evidence of record, as was already discussed. The clear and unexplained contradiction between the ALJ's conclusions and the evidence in the record renders certain of those conclusions unsupported by substantial evidence and prevents meaningful review of his overall conclusions regarding the RFC and disability.

*Kenneth H. G. v. Commissioner of Social Security*, No. 20-CV-1395 (GLS) (DEP), 2022 WL 658110, at \*7 (N.D.N.Y. Feb. 7, 2022).

Here, ALJ Katz ignored and thus did not explain clear contradictions between his analysis and the medical record. His conclusion is also contrary to the Listings themselves: he found that Plaintiff's seizure disorder did not meet Listing 11.02 (Epilepsy) "because the record does not indicate that the claimant's seizure[s] are truly epileptic in nature." (ECF 20 at 23). But when seizures are non-epileptic, the Listings themselves direct reviewers to Listings 12.01 *et seq.*, which the ALJ failed to consider at all, notwithstanding a medical record referencing psychogenic nonepileptic seizures and conversion disorder.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings is

**GRANTED**, and the Commissioner's Motion for Judgment on the Pleadings is **DENIED**. This

case is **REMANDED** for further proceedings consistent with this Opinion and Order. The

Clerk is respectfully directed to enter final judgment consistent with this decision and

close the file.

**SO ORDERED.**

_/s/ Ona T. Wang_

Dated: March 27, 2024                              **Ona T. Wang**
       New York, New York                 United States Magistrate Judge